William F. KIDNEY, Jr., an Infant by his Father and Natural Guardian, William F. KIDNEY, Sr., and William F. Kidney, Sr. Individually, Plaintiffs,

v.

KOLMAR LABORATORIES, INC., and Orange and Rockland Utilities, Inc., Defendants.

No. 83 Civ. 8578.

United States District Court, S.D. New York.

Nov. 4, 1985.

Finkelstein, Kaplan, Levine, Gittelsohn, Tetenbaum, Newburgh, N.Y., for plaintiffs.

Quirk and Bakalor, New York City, for defendant Kolmar.

MacCartney, MacCartney & MacCartney, Nyack, N.Y., for defendant Orange and Rockland Utilities, Inc.

GAGLIARDI, Senior District Judge.

Plaintiffs, William Kidney, Jr. and his father, William Kidney, Sr., brought this action against defendants, Kolmar Laboratories, Inc., and Orange and Rockland Utilities, Inc., to recover damages for personal injuries that William Jr. sustained on June 7, 1981. On July 13, 1981 and again on July 1, 1982, the Liberty Mutual Insurance Company ("Liberty Mutual"), on behalf of the defendant Kolmar, made advancements to William Jr.'s parents totalling $30,000. These payments were intended to be offset against any judgment rendered against Kolmar.

This action was filed on November 28, 1983. On March 4, 1985, judgment was entered for the plaintiffs, who were awarded $637,500 and $37,500, respectively. On March 21, the Orange County Department of Social Services ("Orange County") filed and served notice of a lien for the value of public assistance rendered to William Jr. in treatment of his injuries, totalling $27,-503.33. Plaintiffs move for an order vacating the asserted lien, effectuating the satisfaction of the judgment, and approving the distribution of the proceeds received in satisfaction of the judgment. Orange County cross-moves for an order directing the plaintiffs to pay the full value of the lien, $27,503.33.

N.Y.Soc.Serv.Law § 104(2) (McKinney 1983) restricts the right of social service agencies to recoup social welfare expenditures from awards to persons under 21 years of age. Recoupment cannot be made unless such person "was possessed of money and property in excess of his reasonable requirements" at the time of expenditure. *Id. In Baker v. Sterling*, 39 N.Y.2d 397, 405, 384 N.Y.S.2d 128, 133, 348 N.E.2d 584, 590 (1976), the court noted that an infant's cause of action is property within the meaning of section 104(2). However, the court held that because an award for personal injuries compensates for loss by

providing a fund to meet anticipated needs caused by the injury,

> this fund can never be considered "money or property in excess of his reasonable requirements." This is not true of medical expenses which have been paid by another.... [O]nce the expenses have been paid by the Department.... this portion of the award must be considered "excess" funds within the meaning of the statute.

39 N.Y.2d at 405–06, 384 N.Y.S.2d at 133, 348 N.E.2d at 590. Since the award to William Jr. did not include recovery for medical expenses, no portion of that award may be used to repay Orange County. However, both sides, in their papers, agree that the award of William Sr. could be subject to the lien.

■ A claim for attorneys' fees on a judgment or award has priority over any liens asserted through the Social Services Law. N.Y.Soc.Serv.Law § 104–b(9) (McKinney 1983). Moreover, such a claim has priority over any right of a defendant to a setoff for funds already advanced. Plaintiff Kidney Sr. agreed to pay his attorneys one-third of any sums he recovered, amounting to $12,500. The remainder, $25,000, is to be either credited to Liberty Mutual to offset their advancement or, if the asserted lien is upheld, paid to Orange County.

Section 104–b(2) controls the effectiveness of liens for public assistance and care on claims and suits for personal injuries. That section provides that a public assistance lien is effective if the parties are notified of its existence "prior to the payment of any moneys to [the] injured party." N.Y.Soc.Serv.Law § 104–b(2). Therefore, we must decide whether the insurer's advancements to William Sr. constituted "the payment of any moneys," as that phrase is used in the Social Services Law.

In deciding this question of first impression, this court must consider legislative history and public policy concerns. *Baker v. Sterling, supra,* discusses in some detail the history of the public assistance lien law. At common law, the recipient of pub-

lic assistance was not legally obligated to repay it. *Baker, supra.* In 1901, the legislature altered the common law by enacting a statute enabling welfare agencies to sue to recover excess amounts of assistance paid to beneficiaries. *Id.*

Although not expressly conferring the right, this early statute was interpreted judicially as allowing agencies a right of recovery against monies won by indigent plaintiffs in lawsuits. Eventually, this remedy proved too cumbersome; agencies seeking repayment were forced to undertake costly time-consuming litigation. Seeking to make recovery easier, the legislature in 1964 passed the law at issue in this case. *Baker, supra.*

■ Interpreting the law at issue here in light of its purpose, it appears that the advancements do not constitute "the payment of moneys" within the meaning of section 104–b(2). Instead, "payment" occurs after a judgment has been rendered or a settlement has been reached which the unsuccessful party seeks to satisfy. At this point, any funds which have been advanced may be set off, but not until all social services liens have been satisfied.

Setting the moment of "payment" after a judgment or settlement instead of at a point early in the course of this type of lawsuit facilitates the legislative purpose behind § 104–b of making recoveries by welfare agencies easier. Instead of having to sue to recover excess assistance, the welfare agency may simply assert its lien and demand payment. The agency need not rush to assert its lien on pain of losing its claim due to an early payment of as little as a penny by an insurer. This remedy is especially valuable in cases like this one, where the victorious plaintiff is assetless, having spent his advancement.

Furthermore, sound public policy supports the court's holding today. Interpreting payment as occurring after the resolution of a dispute defends the public weal from plaintiffs who would seek to turn an accident into a windfall. By law, agencies like the Orange County Department of So-

**18**

cial Services must pay the medical expenses of injured indigents. The people of the State of New York have chosen to confer this benefit upon the disadvantaged. However, the state's citizens have not sought to give indigent plaintiffs both their medical expenses and any other sums which they can obtain from insurers eager to settle a claim quickly and inexpensively. This sort of double recovery at public expense is exactly what the several parts of § 104 are designated to prevent.

*Conclusion*

For the foregoing reasons, plaintiffs' motion to vacate the lien of the Orange County Department of Social Services is granted to the extent that said lien exceeds the sum of $25,000. Plaintiffs' other motions are granted.

Submit order.